IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
<u>SOUTHERN DIVISION</u>

| | |
|---|---|
| LESTER CARPENTER REED, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. 00-S-2621-NE ) |
| LARRY LINTON; HARRIS DOBBS; JENNIFER COOK, | ) ) ) |
| Defendants. | ) ) |

FILED
03 JAN 22 PM 2:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
JAN 2 3 2003
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

FINDINGS AND RECOMMENDATION

Lester Carpenter Reed is an inmate in the custody of the Alabama Department of Corrections. Mr. Reed initiated this civil action with a complaint made pursuant to the provisions of 42 U.S.C. § 1983 alleging numerous discrete claims with respect to his medical care and conditions of confinement at the Limestone Correctional Facility. The complaint and amended complaint alleged:

(1) inadequate medical care for Mr. Reed's HIV condition;

(2) cruel and unusual punishment;

(3) a violation of Mr. Reed's "right to privacy;" and

(4) a claim that his mental health treatment was unconstitutionally deficient.

With respect to the latter claim Mr. Reed alleged that "... [his] medicine was discontinued 'without examination of a psychiatrist' in violation of CMS policy." (Amended complaint). Mr. Reed alleged that he had understood that CMS did not employ a psychiatrist after April or May of 1999 and that, as a result, he was denied his "psychotropic" medication and treatment for a period of fourteen or more months. (Amended complaint, document #7, at p.7). On March 12, 2002 the undersigned magistrate judge entered Findings and Recommendation in which it was recommended

that all claims but for Mr. Reed's "mental health" claim be denied. (Document #24). Following a stay in the proceedings occasioned by a change in the insurance carrier for the medical defendants, United States District Judge C. Lynwood Smith, Jr. adopted the recommendation and granted the defendants' motions for summary judgment with respect to all claims but for the psychiatric services claim. That order referred the remaining issue to the undersigned magistrate judge for additional proceedings.

On Wednesday, January 15, 2003 an evidentiary proceeding was held pursuant to the provisions of 28 U.S.C. § 636(b), *Federal Rule of Civil Procedure* 72(b) and L.R. 72.1(b)(3)(D). After consideration of the evidence adduced at the evidentiary proceeding it is RECOMMENDED that the medical defendants' motion for summary judgment be GRANTED in its entirety.

## FINDINGS OF FACT

Lester Carpenter Reed is a self-described "chronic complainer" with regard to his medication and is deeply involved in his medical care. (Evidentiary hearing, testimony of Lester Carpenter Reed). Mr. Reed entered the Alabama penal system in 1994. (Reed). Mr. Reed has contracted the HIV virus. He has received medical treatment and care for this terrible condition during the entire period of his incarceration. Throughout his imprisonment Mr. Reed has been passionate advocate for his own medical care and a vocal champion for other inmates infected with HIV. (See e.g. document #20 and exhibits attached in addition to amended complaint). In 1994 Mr. Reed was seen by Dr. Joseph, a psychiatrist employed by the medical care provider for the penal system. Dr. Joseph prescribed Atarax, 25 mg, an anti-histamine, sometimes used to control symptoms of anxiety and "panic attacks."[1] (Plaintiff's exhibit #1, Interdisciplinary Progress Notes

---

[1] "Panic attacks" does not appear to be a diagnosis per se; however, the phrase is used by both Mr. Reed and the medical defendants to describe anxiety.

and affidavit of Gail Williams, M.D., and testimony of Harris Dobbs, R.N., Evidentiary Hearing). In January of 1997, Dr. Gail Williams, one of the five psychiatrists who have treated Mr. Reed, added Elavil, 25 mg, an anti-depressant, to the medications Mr. Reed was to receive. (Plaintiff's Exhibit #1). The 25 mg dosages of each medicine is the lowest dose available. (Dobbs and Evidentiary Hearing). In 1997 and 1998 the Atarax was apparently discontinued. In November of 1998 Mr. Reed complained to another psychiatrist, Dr. Ryan, that his "panic attacks" had reoccurred when the Atarax was discontinued. (Plaintiff's Exhibit #1).[2]

The Atarax was restarted in January 1998. Mr. Reed's prescription expired again in February 1999 and was renewed by a Dr. Keith. (Plaintiff's Exhibit #1). In April of 1999 Dr. Williams saw Mr. Reed. Dr. Williams renewed the Atarax and Elavil prescriptions for a term of ninety days. (Plaintiff's Exhibit #1). Each time Mr. Reed was seen by a psychiatrist the prescriptions were refilled for a specific term of ninety days. There is no evidence that the drugs were to be taken indefinitely. In August of 1999 the Elavil prescription expired. In November of 1999 the Atarax prescription expired. *Id.* On December 8, 1999 Mr. Reed was seen by Dr. Khouri, a general practitioner employed by CMS, the institutional medical care provider. In a verbal order of Dr. Khouri, the Atarax was renewed until March of 2002. (Plaintiff's Exhibit #1). The progress notes at the time of the visit with Dr. Khouri reflected an entry noting that "... [Mr. Reed] had ... no problems or complaints." (Plaintiff's Exhibit #1). The order of Dr. Khouri which renewed Mr.

---

[2] As noted in an earlier footnote the term "panic attacks" is not referred to as a diagnosis. The phrase, in fact, appears in quotation marks in the medical records.

Reed's medication was also signed by Dr. Faulcon. (Plaintiff's Exhibit #1).[3/] The renewal of the medications expired on March 8, 2000. (Plaintiff's Exhibit #1).[4/]

After his visit with Dr. Williams in April, 1999, Mr. Reed did not see a psychiatrist until March 6, 2001 when he was examined by Dr. Murbach. (Plaintiff's Exhibit #1). Dr. Murbach found at the time of that examination *inter alia*, "... absolutely no evidence of anxiety on interview...." (Plaintiff's Exhibit #1). Dr. Murbach "restart[ed] Elavil/Atarax [and] discussed at length [Mr. Reed's] numerous complaints regarding his medical care." (Plaintiff's Exhibit #1). Mr. Reed testified that his current psychiatrist, Dr. Callahan, has recommended discontinuing the Atarax and the Elavil in favor of non-medication treatment. (Evidentiary hearing, Reed). Dr. Williams observed in his affidavit, introduced into evidence by Mr. Reed, that "the patient has never been seriously mentally ill ... his medication treatment was completed through March 2000. Most patients do not need to take these medications for their entire life time." (Plaintiff's Exhibit #1).

Both before and after his Elavil and Atarax prescriptions expired in March of 2000, Mr. Reed saw defendant Nurse Jennifer Cook five days per week when she dispensed his HIV medication. (Mr. Reed's testimony; Ms. Cook's testimony). In addition, on April 3, 2000 Mr. Reed wrote Harris Dobbs to complain that he had failed to get one of his HIV medications. (Plaintiff's Exhibit D to document #20). On April 5, 2000 Mr. Dobbs responded to Mr. Reed in writing concerning that complaint. In June 2000 Mr. Reed complained to Cook about stomach problems. (Reed). On November 4, 2000 Mr. Reed complained again to Dobbs that he had not received a

---

[3/] Mr. Reed testified that he understood Dr. Faulcon to be psychiatrist but that he had never been examined by Dr. Faulcon.

[4/] While Mr. Reed argues that there is some difference to be discerned between the term "expired" as used in the medical records and the term "lapsed" upon which he insists, the purported distinction is not readily apparent.

particular medication. *Id.* Once again Mr. Dobbs responded in writing to Mr. Reed concerning his complaint. In fact, Mr. Reed testified that Mr. Dobbs and Ms. Cook had always been responsive to his medical demands. (Reed, Evidentiary Hearing).

Mr. Reed contends that the defendants were deliberately indifferent to his serious medical needs because his prescriptions for Elavil and Atarax expired without examination by a psychiatrist. He readily concedes that throughout the period from March 8, 2000 to February, 2001, he never complained about the absence of his anxiety medication. Mr. Reed admits that he spoke with Nurse Cook five days per week throughout the entire relevant time period. Mr. Reed testified that he was examined throughout this period by CMS physicians for treatment of his HIV. He stated that he would complain to the physicians, including Dr. Colletta Simon, about the quality of medical care, the HIV medication he received and the conditions in the AID unit. Mr. Reed testified, however, that he believed he was absolved from any responsibility to report a recurrence of symptoms related to anxiety or to request to see a psychiatrist because his "mental health treatment plan" had established a "protocol" which required that he see a psychiatrist every ninety days and that the defendants were obligated to ensure that he saw a psychiatrist whether or not he asked or told the staff that he needed treatment.[5]

The medical records tendered by Mr. Reed do not support his conclusion that a "protocol" of any kind was the product of a treatment plan prepared by a physician, entered as instructions and orders to the medical support staff. While it may be true that the psychiatrists saw

---

[5] This is in contrast to Mr. Reed's allegation in the complaint in which he implied that he requested to see a psychiatrist and the request was denied. During his testimony Mr. Reed made clear that he asked to see a psychiatrist in February of 2001. The request was made to Nurse Cook who immediately completed a request form and forwarded it to Mr. Dobbs. This request form is the only such form which appears in Mr. Reed's medical records.

Mr. Reed at ninety day intervals there is no suggestion in the records that a "CMS policy" nor a specific "protocol" was violated. Mr. Dobbs explained that generally an inmate patient is scheduled by the nursing staff to see a psychiatrist when the patient makes a request. The doctor could also order a follow-up visit in the physician's notes. Mr. Reed's explanation for his failure to request an appointment with a psychiatrist is premised on his factual assertions that (1) he had asked Nurse Cook in March of 2000 for permission to see a psychiatrist and (2) his belief that CMS did not employ a psychiatrist during the relevant time. (Reed). Nurse Cook testified credibly that Reed did not ask her to schedule an appointment with a psychiatrist until February of 2001. (Cook). The medical records clearly reflect that Cook notified Dobbs of Reed's request in February of 2001. The written request for these services is reflected in Reed's medical records and appears to have resulted in the examination by Dr. Murbach. Mr. Reed's claim that he asked Ms. Cook to see a psychiatrist in March of 2000 is simply not credible. Even if true, however, Mr. Reed concedes he never complained thereafter to Nurse Cook, Nurse Dobbs or any of the medical staff about his "panic attack" symptoms nor did he request orally or in writing to see a psychiatrist between March of 2000 and February 2001. Mr. Reed contends that he was not required to make a request or even to report his "symptoms" because of an unspecified, unidentified "treatment plan." (Reed's testimony). Mr. Reed's second premise for his conclusion that he was not required to request a psychiatrist nor to notify the medical staff of his symptoms is his contention that CMS did not employ a psychiatrist during the relevant period. Nurse Cook and Nurse Dobbs each testified that psychiatric services, including those of a psychiatrist, were available by pager, telephone, and in person throughout the entire period relevant to this litigation. Each testified that psychiatric services were provided to other inmates in this time frame. (Dobbs and Cook). This credible testimony is unrefuted.

## APPLICABLE LAW

The legal standard at issue is relatively settled. It is a violation of a prisoner's constitutional rights to be deliberately indifferent to the prisoner's serious medical needs. *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). Deliberate indifference involves something more than negligence, but something less than a desire to intentionally harm; in effect, an official is deliberately indifferent when he is "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and that he ... [actually] draw[s] th[at] inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). "Failure to provide basic psychiatric and mental health care states a claim of deliberate indifference to the serious medical needs of prisoners." *Rogers*, 792 F.2d at 1058. The test for deliberate indifference involves a subjective component. *Harris v. Coweta County*, 21 F.3d 388, 394 (11th Cir. 1994) ("The subjective component of deliberate indifference ... is a question for the finder of fact that is not resolved through the objective reasonableness inquiry of qualified immunity.") Whether a health care worker's conduct amounts to deliberate indifference is a fact sensitive issue requiring a case-by-case analysis. *Greason v. Kemp*, 891 F.2d 829, 842 (11th Cir. 1990); see also *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989). A "serious medical need" is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1187 (11th Cir. 1994).

The law of this circuit clearly establishes that serious psychiatric medical needs are within the ambit of the deliberate indifference analysis. *Steele v. Shah*, 87 F.3d 1266 (11th Cir. 1996). In *Steele*, for example, a cause of action could be maintained against a psychiatrist under §

1983 when the psychiatrist discontinued psychotropic medication without review of the patient's medical records, his treatment plan, without consultation with any medical staff and actually ignored the treatment recommendations of the medical staff from the inmate's prior institution which reflected that the plaintiff was a suicide risk, having twice attempting suicide. In assessing Shah's conduct, the Eleventh Circuit concluded that a fact finder would be entitled to find, should it choose to do so, that the psychiatrist "knew of a substantial risk from the very fact that the risk was obvious" and "deliberately disregarded that risk." (*Steele*, quoting *Farmer*, 511 U.S. at 842, 114 S.Ct. 1970.) The holding in *Steele* addressed only the Rule 12(b)(6) aspects of the claims. Circuit precedent, including *Greason v. Kemp* and *Waldrop v. Evans*, *supra*, like *Steele*, address serious psychiatric medical needs with symptoms manifesting themselves in self-mutilation and suicide.

Each of Mr. Reed's cited authorities addresses a common theme--A serious mental illness posing a substantial risk of harm to the inmate patient.[6] Mr. Reed refers to a passage in *Rogers* which appears to imply that any delay in care or the use of a less efficacious plan of treatment violates the Constitution. The actual reference to "easier and less efficacious treatment" is neither a finding nor a holding of the Eleventh Circuit but, rather, merely presented as an example of a serious medical need as discussed in *Williams v. Vincent*, 508 F.2d 541 (2d Cir. 1974).[7] In short, quoting *Rogers*, for the proposition that <u>merely</u> taking an easier and less efficacious route in treatment is deliberate indifference is simply wrong.

---

[6] While Mr. Reed did not testify to any symptoms of anxiety during the evidentiary proceeding, he did in earlier papers refer to the occasional need to hold his head under running water or taking showers to alleviate stress. For the purposes of this order, those statements which were not made under oath at the evidentiary proceeding are deemed to be true.

[7] In *Williams* a large portion of a plaintiff's ear had been severed. He was told by the medical staff at emergency treatment that he did not need his ear. The severed portion of his ear was thrown away and the wound closed with stitches. Six operations were later required on the ear. For Rule 12(b)(6) purposes the Second Circuit found the plaintiff had stated a cause of action.

## APPLICATION OF LAW TO FACT

Mr. Reed's "anxiety" was not a symptom readily apparent to Nurse Cook, Mr. Dobbs or Mr. Linton. Mr. Reed never attempted to complain to any of these individuals concerning his "panic attacks." The evidence produced by Mr. Reed himself includes the affidavit of Dr. Gail Williams who emphatically states that "[Mr. Reed] has never been seriously mentally ill...." (Plaintiff's Exhibit #1). The relatively mild symptoms of Mr. Reed are in sharp contrast to the severe and chronic conditions affecting patients in *Waldrop, Greason,* and *Steele*.[8] Mr. Reed simply does not now nor has he ever suffered from a serious medical psychiatric need.[9]

Mr. Reed was afforded the opportunity to complain to Nurse Cook and Nurse Dobbs in addition to other medical professionals including physicians throughout the entire period of which he complains. He has conceded that Nurse Dobbs and Nurse Cook were generally responsive to his frequent medical requests as an HIV patient. Mr. Reed's only claim with respect to Mr. Linton, the regional director for CMS, appears to be his contention that CMS did not employ a psychiatrist during the relevant time period. There is simply no evidence that a psychiatrist was unavailable. There is substantial credible evidence that psychiatric services were available by pager, telephone and in person throughout the period of time Mr. Reed purportedly suffered from his "panic attacks."

---

[8] That is not to say that an anxiety attack in an AIDS patient is not disconcerting, alarming or frivolously minor. The condition, however, is not self evident and no one could reasonably be expected to know of the discomfort without the assistance of Mr. Reed.

[9] Mr. Reed's reference to a need for "psychotropic medication" is a personal conclusion not necessarily borne out by the medical records. The anti-depressant and anti-histamine treatment for anxiety attacks does not as a matter of common knowledge appear to fall into the classification of psychotropic treatment.

9

After consideration of the evidence and the applicable law it is RECOMMENDED that Mr. Reed's claims be denied and the defendants' motion for summary judgment be GRANTED in its entirety.

DONE this the 22nd day of January, 2003.

PAUL W. GREENE
UNITED STATES MAGISTRATE JUDGE